FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 12, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TRACY F.,[1] | No.    4:24-cv-5098-EFS |
| Plaintiff, | |
| v. | **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |
| MICHELLE KING, Acting Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Tracy F. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims she is unable to work due to migraine headaches, lumbar degenerative disc disease, lupus, rheumatoid arthritis, depression/bipolar, anxiety, obsessive compulsive disorder, and PTSD. As

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Michelle King is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure Rule 25(d) and the Social Security Act, 42 U.S.C. § 405(g), she is hereby substituted as the Defendant.

is discussed below, the ALJ consequentially erred at step two of the disability evaluation. This matter is remanded for further proceedings.

## I. Background

Plaintiff has struggled with her physical and mental health, seeking medical treatment for physical conditions on at least a monthly basis, participating in mental-health counseling, and having her medication for her physical and mental conditions managed. Believing that she is unable to work fulltime, Plaintiff applied for benefits in July 2020 under Title 16 based on the above-listed conditions.[3]

After the agency denied benefits, ALJ Mary Ann Poulose held a telephone hearing in June 2023, at which Plaintiff and a vocational expert testified.[4] Plaintiff testified that she last worked fulltime in 2019, being fired after a panic attack.[5] Soon thereafter, she was again fired from her next (and last) parttime job.[6] She testified that she usually wakes up very fatigued with body pain, she will then get her kids ready for school, and once they are on the bus she returns home to lay down and rest for a couple hours.[7] She then does chores such as taking out the trash or washing dishes but she is unable to do much because her body starts

---

[3] AR 211–29.

[4] AR 45–76, 113–17.

[5] AR 51–52.

[6] AR 53.

[7] AR 53, 68.

hurting and she gets exhausted.[8] She shared that due to weakness in her legs and her back pain she sometimes needs help getting dressed or with bathing.[9] She testified that because her hands get stiff and rigid she has difficulty at times doing certain tasks, such as buttoning, zipping, typing, and opening a doorknob.[10] She shared that sitting in an upright chair for more than 10 minutes puts too much pressure on her back, and she experiences back pain and leg weakness if she stands in place for more than 5 minutes.[11] When going up and down stairs, she uses the rail and will usually place both feet on a stair tread before bringing her feet to the next step.[12] She shared that she uses a cane at times to help with stability.[13] She testified that she gets migraines at least weekly and when she has one she will go into a dark room and try to sleep.[14] The medications that she takes

---

[8] AR 53–54.

[9] AR 54.

[10] AR 56–57, 65.

[11] AR 57.

[12] AR 57–58.

[13] AR 58.

[14] AR 60.

for her various conditions can cause nausea, fatigue, and restless legs.[15] She shared that she gets face rashes and her hair has been falling out.[16]

She shared that she also struggles with depression, being around people and crowds, and with flashbacks and nightmares.[17] She testified that she does not visit with other people, attend church, or clubs, and usually does not go grocery shopping by herself—she either goes with others or has groceries delivered.[18] She testified that she tries not to drive due to her anxiety and so she gets a ride to appointments and stores from her boyfriend's mother.[19] She stated that she has difficulty remembering a story, even though she likes to read. She also likes to create digital art and do arts and crafts, such as designing graphics for tumbler cups, t-shirts, stickers, and stained glass, but can only do so for about 15 minutes before taking a break due to cramping and stiffness in her hands.[20]

---

[15] AR 61.

[16] AR 70.

[17] AR 62–63.

[18] AR 55–56, 69.

[19] AR 53, 64.

[20] AR 55, 65–68.

After the hearing, the ALJ issued a decision denying benefits.[21] The ALJ found Plaintiff's alleged symptoms were inconsistent with the medical evidence and other evidence.[22] As to the medical opinions, the ALJ found:

- the reviewing administrative findings by Craig Billinghurst, MD, and Robert Stuart, MD, generally persuasive.

- the statements from treating provider Mark Flesher, MD, and examining source David Morgan, PhD, and the reviewing administrative findings by Howard Atkins, PhD, and Bruce Eather, PhD, not persuasive.[23]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since July 2, 2020, the application date.

- Step two: Plaintiff had the following medically determinable severe impairments: anxiety and obsessive compulsive disorder, cannabis use disorder, ovarian cyst, headaches, and lumbar spondylosis.

_____

[21] AR 1–39. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[22] AR 26–29.

[23] AR 29–31.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work except Plaintiff cannot climb ladders, ropes, and scaffolds; can only occasionally climb ramps and stairs; can occasionally crouch, crawl, stoop, and kneel; and can perform simple repetitive work with no public and only occasional coworker interaction.

- Step four: Plaintiff was unable to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as housekeeping cleaner, merchandise marker, and collator operator.[24]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[25]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability

---

[24] AR 17–33.

[25] AR 1–6.

1    determination.[26] Substantial evidence is "more than a mere scintilla but less than

2    a preponderance; it is such relevant evidence as a reasonable mind might accept as

3    adequate to support a conclusion."[27]

4                                    **III.    Analysis**

5          Plaintiff argues the ALJ grossly mischaracterized the record regarding

6    clinical evidence, remarkable objective findings, and well-supported symptoms

7    suffered by Plaintiff thereby erring at steps two and three, when evaluating the

8    medical opinions and Plaintiff's symptom testimony, and erring at step five. The

9    Commissioner argues substantial evidence supports the ALJ's rationale analysis.

10

11   _____

12   [26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g);

13   *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

14   *grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an

15   ALJ decision due to a harmless error—one that "is inconsequential to the ultimate

16   nondisability determination").

17   [27] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.

18   1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The

19   court "must consider the entire record as a whole, weighing both the evidence that

20   supports and the evidence that detracts from the Commissioner's conclusion," not

21   simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*,

22   143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does

23   not indicate that such evidence was not considered[.]").

1 As is explained below, by not fairly and fully considering the objective medical

2 evidence related to Plaintiff's rheumatoid arthritis and/or lupus, the ALJ erred.

3 This error impacted the remainder of the ALJ's disability evaluation.

4 **A.    Step Two (Severe Impairment): Plaintiff establishes consequential error.**

5

6      Plaintiff argues that the ALJ erred at step two by failing to find the

7 impairments of rheumatoid arthritis, lupus, depression/bipolar, and PTSD as

8 severe impairments. The Commissioner argues that Plaintiff has not shown any

9 step-two error and that any such error was inconsequential because the ALJ's

10 finding that Plaintiff has severe lumbar spondylosis covers Plaintiff's functional

11 impairments allegedly related to rheumatoid arthritis and/or lupus, and any

12 symptoms related to alleged depression/bipolar disorder or PTSD are adequately

13 addressed by the found severe anxiety and obsessive compulsive disorder.

14      1.    Standard

15      At step two, the ALJ determines whether the claimant suffers from a

16 "severe" impairment, i.e., one that significantly limits her physical or mental

17 ability to do basic work activities.[28] This involves a two-step process: 1)

18 determining whether the claimant has a medically determinable impairment, and

19 2) if so, determining whether the impairment is severe.[29] To be severe, the medical

20

21 _____

22 [28] 20 C.F.R. § 416.920(c).

23 [29] *Id.* § 416.920(a)(4)(ii).

evidence must establish that the impairment would have more than a minimal effect on the claimant's ability to work.[30] Neither a claimant's statement of symptoms, a diagnosis, nor a medical opinion sufficiently establishes the existence of an impairment.[31] Rather "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source."[32] Evidence obtained from the "application of a medically acceptable clinical diagnostic technique, such as evidence of reduced joint motion, muscle spasm, sensory deficits, or motor disruption" is considered objective medical evidence.[33] If the objective medical signs and laboratory findings demonstrate the claimant has a medically determinable impairment,[34] the ALJ must then determine whether that impairment is severe.[35]

---

[30] *Id.*; *see* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical Impairments That Are Not Severe).

[31] *Id.* § 416.921.

[32] *Id.* § 416.921. *See also* SSR 85-28 at *4.

[33] 3 Soc. Sec. Law & Prac. § 36:26, Consideration of objective medical evidence (2019). *See also* 20 C.F.R. §§ 416.902(k), 416.913(a)(1).

[34] "Signs means one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [a claimant's] statements (symptoms)." 20 C.F.R. § 416.902(l).

[35] *See* SSR 85-28 at *3.

1    The severity determination is discussed in terms of what is *not* severe.[36] A

2    medically determinable impairment is not severe if the "medical evidence

3    establishes only a slight abnormality or a combination of slight abnormalities

4    which would have no more than a minimal effect on an individual's ability to

5    work."[37] Because step two is simply to screen out weak claims,[38] "[g]reat care

6    should be exercised in applying the not severe impairment concept."[39]

7        2.    ALJ's Findings

8        At step two in regard to rheumatoid arthritis and lupus, the ALJ found these

9    alleged impairments were non-medically determinable impairments because they

10   were not supported by the medical record as:

11       the treatment record showed the claimant had unrevealing
         autoimmune workup (Exhibit 4F, pages 5, 22). Testing from July 20,
12       2021, showed a negative ANA, normal CCP antibodies and ESR
         (Exhibit 14F, pages 49-50). The undersigned considered the claimant's
13       pain complaints in regards to the medically determinable
         impairments noted above [which as to physical impairments were
14       ovarian cyst, headaches, and lumbar spondylosis].[40]

15   In addition, later in the nondisability decision, the ALJ wrote:

16       Regarding use of a cane, pursuant to Social Security Ruling 96-9p, to
         find that a hand-held assistive device is medically required, there
17

18   _____

     [36] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).
19
     [37] *Id.*; *see* SSR 85-28 at *3.
20
     [38] *Smolen*, 80 F.3d at 1290.
21
     [39] SSR 85-28 at *4.
22
     [40] AR 20.
23

must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). Such a description is not in the record. The undersigned considered that on August 3, 2021, the claimant exhibited normal ambulation but used a cane (Exhibit 14F, pages 13-18).

3.     Summary of Medical Records[41]

In May 2020, Plaintiff was treated by rheumatologist Dr. Sudeep Thapa. Dr. Thapa wrote, "planes of pain in multiple joints. Hand pain is prominent in [proximal interphalangeal] (PIPs). Aching in character. Moderate to severe in intensity."[42] In June 2020, Plaintiff sought treatment from her primary provider Dr. Mark Flesher for a follow-up of inflammatory polyarthritis and a history of systemic lupus erythematosus (SLE).[43] She reported pain and swelling in multiple PIP joints, with the most prominent being observed in the third and fourth PIPs. In August 2020, Dr. Flesher treated Plaintiff for low back pain, which Dr. Flesher identified as being due to both arthritis and endometriosis.[44]

---

[41] This summary is not a complete summary of the medical records. Instead, it identifies some of the treatment records for Plaintiff's physical conditions in order to provide context to the step-two analysis.

[42] AR 549.

[43] AR 1096.

[44] AR 607.

1    In September 2020, Plaintiff had surgery to remove her left ovary and have

2 a bladder mesh placed.[45] Two weeks later she reported that the surgery helped

3 with her ovarian pain.[46]

4    In October 2020, neurologist Dr. Steven Erlemeier treated Plaintiff for

5 syncope, migraines, and memory loss.[47] As part of the examination, Dr. Erlemeier

6 noted spasticity in Plaintiff's extremities along with reflexes of: "Reflexes Right:

7 biceps 3/4, triceps 3/4, patellar 3/4, and Achilles 4/4; Sustained ankle clonus.

8 Reflexes Left: patellar 3/4 and Achilles 4/4 and biceps 2/4 and triceps 2/4; 3 beat

9 clonus at ankle. . . Equivocal Babinski."[48] Dr. Erlemeier assessed Plaintiff with

10 lower limb spasticity and ankle clonus. He considered whether an MRI of the brain

11 would be helpful to "document the level of encephalomalacia in the left more than

12 right hemispheres. If the EEG is abnormal consider temporal lobe cuts to assess for

13 mesial temporal sclerosis."[49]

14    In October 2020, Plaintiff participated in an EEG sleep study to try to

15 determine the source of her reported multiple syncope episodes.[50] The EEG was

16

17 [45] AR 644–60.

18 [46] AR 451.

19 [47] AR 564–69.

20 [48] AR 568.

21 [49] AR 569.

22 [50] AR 661.

23

normal. In November 2020, Plaintiff had a follow-up with Dr. Thapa by telephone for "inflammatory polyarthritis," during which she reported aching pain in multiple joints of bilateral upper and lower extremities, although she reported that her hand pain was better since starting hydroxychloroquine, but she still had swelling and her back pain was persistent.[51]

In December 2020, Plaintiff had a follow-up appointment with Dr. Erlemeier, where she reported continued episodes of syncope.[52] She was observed with sustained ankle clonus and 3 beat clonus at the ankles.[53] Dr. Erlemeier wrote, "reassurance was provided that overall she does have spastic quadriparesis more on the right side [with] the right lower extremity was the most affected. This is likely from her premature status and/or attendant complications. . . . We will obtain a sleep deprived EEG though there is concern that a number of her spells are more stress related in terms of her syncope and collapse."[54] Dr. Erlemeier treated Plaintiff again in February 2021 for lower limb spasticity, ankle clonus, and sleep deprivation.[55] He observed that she "has sustained ankle

---

[51] AR 562–63.

[52] AR 555.

[53] AR 558.

[54] AR 559.

[55] AR 551–55.

DISPOSITIVE ORDER - 13

1    clonus and 3 beat clonus at the ankles . . . Conjugate eye movements. Gait is not

2    ataxic."[56]

3        In March 2021, Plaintiff met with Dr. Thapa for a lupus erythematosus

4    follow-up. She reported that she has less pain in her peripheral joints and fewer

5    lupus flares but increased pain in her lower back.[57] Dr. Thapa assessed

6    inflammatory polyarthritis/history of SLE/fibromyalgia.[58] Dr. Thapa noted that,

7    although Plaintiff has a history of lupus, her ANA was negative, and her

8    autoimmune workup was negative, yet she has synovitis of multiple PIPs.

9    Dr. Thapa ordered x-rays, which revealed mild bilateral sacroiliac joint

10    degenerative changes and mild L5-S1 disc space narrowing.[59] Pain medication was

11    prescribed.

12        The next day Plaintiff sought urgent treatment for bilateral flank/back pain

13    and difficulty urinating.[60] She was observed with mild bilateral costovertebral

14    angle tenderness to percussion, abdominal tenderness, mild tenderness to bilateral

15    lumbar paraspinal musculature on palpation, and mild impairment of range of

16

17    _____

18    [56] AR 554.

19    [57] AR 548.

20    [58] AR 549.

21    [59] AR 570–71.

22    [60] AR 662, 881–34.

23

1    motion when trying to bend over to touch her toes. She was assessed with strain of

2    lumbar paraspinal muscle and flank pain.

3        In June 2021, Plaintiff had a rheumatology follow-up with Dr. Thapa by

4    telephone.[61] Plaintiff reported that her hand and feet joint pain were doing better

5    with the hydroxychloroquine treatment, but she continued to have aching back

6    pain and multiple joint/muscle pain throughout her body, including difficulty

7    walking and doing activities of daily living.[62] Plaintiff was continued on Plaquenil

8    medication.[63]

9        At her July 2021 appointment with Dr. Flesher, Plaintiff reported that she

10   felt like she was having a lupus flare up.[64] Although Plaintiff's gait and motor

11   strength were normal, Dr. Flesher assessed her with multiple joint pain.[65] Later in

12   July, Plaintiff sought treatment for headaches and sinus pressure, and the MRI

13   ordered by Dr. Flesher revealed "single focus of FLAIR signal hyperintensity in the

14   centrum semiovale, likely nonspecific finding in a patient this age. Can be seen in

---

[61] AR 801.

[62] AR 804.

[63] AR 805–06.

[64] AR 957.

[65] AR 962.

1    setting of history of migraine. Given single focus less likely differential

2    considerations include early demyelinating process, vasculitis, Lyme disease."[66]

3         Plaintiff saw Dr. Flesher again in August 2021 during which Plaintiff

4    reported dizziness and migraines with aura and was observed ambulating with a

5    cane.[67] Plaintiff returned to see Dr. Flesher the next day due to pain in her leg and

6    dizziness.[68] Two weeks later Plaintiff returned to Dr. Thapa for her back pain and

7    hip pain that started about three weeks prior, requiring her to use a cane to walk.[69]

8    Dr. Thapa wrote "no synovitis in bilateral upper and lower extremities" but she

9    was positive for greater trochanteric bursitis (GTB).[70] Plaintiff received a steroid

10   injection into the bilateral trochanteric bursa.[71]

11        Plaintiff had a new patient consultation for physical therapy in September

12   2021.[72] Her back was tender to palpation over the lumbar-sacral spine, tenderness

13   over sacroiliac (SI) joints, with negative straight leg raise, positive Faber for SI

14   joint, negative lumbar facet loading, with some difficulty arising from seated

---

[66] AR 979.

[67] AR 952.

[68] AR 1071.

[69] AR 1092.

[70] AR 1097.

[71] AR 1097.

[72] AR 1165.

position to standing, a single leg stand bilaterally with minimal sway, with a slow and antalgic gait initially but then improved with cooperation.[73] Her exam was found to be consistent with sacroiliitis. The treating PA wrote, "She notes she sometimes has pain from her low back down both legs, but exam today is benign."[74] Plaintiff engaged in several physical therapy sessions for her low back pain:

- Oct. 4, 2021: forward head, increased thoracic kyphosis and lumbar lordosis, some bilateral foot drag, significant bilateral Trendelenburg, mild lateral deviations, lumbar flexion and extension painful range of motions, weak L4 lumbar myotomes on the right and left, positive straight leg raise on right, possible two beat clonus in bilateral S1, thoracic and lumbar joints mobility is hypomobile and painful, hip abduction on right and left was 3/5, tender to palpation in the lumbar, and decreased hip flexion on the right.[75]

- Oct. 12, 2021: "Patient fatigued quickly with exercises, however tolerated well overall."[76]

- Nov. 29, 2021: Plaintiff reported that she has fallen about 5 times. "Patient reported fatigue following leg bike but did tolerate it well. Balance was difficult with ball basics and patient may benefit from vestibular assessment."[77]

- Dec. 6, 2021: "Fell yesterday at night around 9 pm. Was washing dishes and just standing there and legs gave out. No injuries besides a small

---

[73] AR 1166.

[74] AR 1167.

[75] AR 1234.

[76] AR 1233.

[77] AR 1229.

bruise on knee. Back is sore today. When laying on L side there is some dizziness." "Tested positive for left [posterior semicircular canal] [benign paroxysmal positional vertigo] responded to treatment."[78]

- Dec. 13, 2021: "[P]atient is progressing as expected," tolerance to treatment was good, and "no positions provoked dizziness with testing today."[79]

- Dec. 21, 2021: "No positions provoked dizziness with testing."[80]

- Jan. 7, 2022: "Some soreness in the back but has been doing exercises and feels like it's helping. Carrying and doing the stairs causes back to hurt for the rest of the day."[81]

- Jan. 14, 2022: Plaintiff reported she had increased anxiety and stress due to life situations and dizziness and pain symptoms have worsened as well. Tightness to palpation in the lumbar and thoracic paraspinals with trunk range of motion guarded but functional.[82]

- Jan. 26, 2022: Plaintiff stated that she fell that morning and days prior. "Patient was also instructed to use a [single point cane] to reduce risk of falls. Patient required [contact guard assist] while walking in clinic and displayed unstable gait."[83]

---

[78] AR 1224–25.

[79] AR 1222, 1220.

[80] AR 1218.

[81] AR 1212.

[82] AR 1208.

[83] AR 1204.

DISPOSITIVE ORDER - 18

- Feb. 3, 2022: Plaintiff reported a fall over the weekend and had a bruise on her left triceps.[84]

- Feb. 10, 2022: Plaintiff's back was hurting due to cleaning last night, but no falls since the last appointment and she felt more stable.[85]

- Feb. 22, 2022: Plaintiff reported she fell down the stairs the day prior due to dizziness. She was observed with very fatiguing hip abduction and her lumbar paraspinals and bilateral quadratus lumborum were tender to palpation.[86]

The discharge letter for physical therapy lists Plaintiff's diagnosis as low back pain, fibromyalgia, muscle weakness, lumbar spine stiff, and benign paroxysmal positional vertigo.[87]

Also, during this period, Plaintiff returned to see Dr. Flesher. In the "Physical Exam" portion of these treatment notes, Dr. Flesher did not note that he observed any abnormal ambulation or musculoskeletal findings. But when considering Dr. Flesher's notes in other sections of his treatment records, particularly in the "History of Present Illness" (HPI) or  "Assessment/Plan" sections, it is unclear if the findings under the "Physical Exam" section were findings made by Dr. Flesher or merely default language.[88] For instance,

---

[84] AR 1202.

[85] AR 1196.

[86] AR 1191.

[87] AR 1238.

[88] AR 1476, 1460, 1441–43, 1430–31.

notwithstanding normal findings under the Physical Exam section, in October 2021, Dr. Flesher referred Plaintiff for rheumatologist for "systemic lupus erythematosus," as Plaintiff was concerned about her recent hair loss.[89] In February 2022, Dr. Flesher referred Plaintiff to a neurologist for migraines and memory impairment, and again to a rheumatologist for "bursitis."[90] At her April 2022 appointment with Dr. Flesher, she reported she has been "shaky" and increasingly thirsty and requested to see a neurologist for her migraines.[91] At the June 2022 appointment, Dr. Flesher noted that Plaintiff was using a cane to ambulate that day and she reported tingling in her arms and hands; Dr. Flesher ordered a repeat MRI to identify the cause for muscle weakness.[92]

The MRI of the brain performed in July 2022 showed that the single focus of the FLAIR signal hyperintensity in the left centrum semiovale was unchanged.[93] In August 2022, Dr. Flesher ordered physical therapy for Plaintiff's left shoulder pain, which Plaintiff participated in from September to October 2022.[94]

---

[89] AR 1475–76.

[90] AR 1461.

[91] AR 1440–46.

[92] AR 1425, 1430–31.

[93] AR 1260.

[94] AR 1160.

1        In February 2023, Plaintiff reported abnormal weight loss, about 15 pounds

2  over the last six weeks.[95] A colonoscopy was ordered, and the results were

3  normal.[96] Also that month, Dr. Flesher treated Plaintiff and completed a

4  Documentation Request Form for Medical or Disability Condition.[97] On the

5  treatment record, Dr. Flesher assessed Plaintiff with Lynch syndrome[98]; lupus

6  erythematosus, noting that she sees rheumatology and that she has "arthritis from

7  Lupus in the back, legs, and [h]ips and some muscle weakness from it"; mixed

8  anxiety and depressive disorder; migraine without aura; and unspecified

9  rheumatoid arthritis.[99] On the disability form, he wrote that Plaintiff has lupus,

10  rheumatoid arthritis, migraine, anxiety/depression, bipolar, and PTSD. In addition

11  to her limitations from her PTSD and anxiety, he opined that Plaintiff's arthritis

12  from her lupus and rheumatoid arthritis makes it difficult for her to sit and that

13

14

---

15  [95] AR 1377.

16  [96] AR 1278–82.

17  [97] AR 1143–45.

18  [98] Lynch syndrome is a hereditary condition caused by altered genes, in which

19  immune defense to colorectal cancer is limited and they are at high risk of

20  developing cancer before age 50.  American Cancer Society, *Lynch Syndrome*,

21  www.cancer.org (Last viewed February 5, 2025.)

22  [99] AR 1370.

23

DISPOSITIVE ORDER - 21

her migraines would make her unreliable. Dr. Flesher opined that Plaintiff was unable to work "for now" and that she would be limited to sedentary work.[100]

In April 2023, Plaintiff saw Dr. Mike Kolczynski with Trios Spine and Interventional Pain Clinic for her low back pain and bilateral hip pain. He observed:

> Plaintiff is slow to rise from seated standing position and able to stand on toes and heels unsupported with more difficulty standing on heels bilaterally, pain with lumbar extension lateral bending, lumbar facet loading mildly positive, tenderness to palpation at lower lumbar level, positive GTB bilaterally, positive IT bands bilaterally, sensory exam within normal limit except reported feeling paresthesia throughout right L3 and L4 dermatomal distribution, DTRs at L4 3+ bilaterally, SLR positive bilaterally.[101]

Dr. Kolcyznski wrote, "Physical exam is consistent with myofascial pain as well as facet arthropathy but also radiculopathy in the face of hyperreflexia during exam."[102] He also assessed muscle pain, "Myalgia, other site."[103] He ordered an MRI of the spine, as well as discussed initiating a TENS unit and swimming to de-stress the spine.

An MRI in May 2023 revealed:

> Lower lumbar degenerative spondylosis most prominent at L5-S1 where small broad-based posterior disc bulge results in mild spinal canal narrowing. Moderate right and mild left L5-S1 foraminal

---

[100] AR 1143.

[101] AR 1326.

[102] AR 1326.

[103] AR 1326.

narrowing with perceived impingement on the undersurface of the exiting right greater than left L5 nerve root.[104]

In June 2023, Plaintiff followed up with Dr. Kolcyznski, who wrote, "physical exam again corroborates radiculopathy in the face of axial back pain with radiculopathy being worse on the right greater than left."[105] Plaintiff was given a lumbar epidural steroid injection.

A week later, Plaintiff sought treatment from Dr. Flesher for numbness in her left thumb and lumbar radiculopathy, along with mixed anxiety and depressive disorder.[106]

4.    Analysis

The above summary reflects that Plaintiff sought regular treatment for a variety of physical maladies; however, the ALJ only found that Plaintiff had the severe physical impairments of ovarian cyst, headaches, and lumbar spondylosis. The Commissioner argues the severe impairment of lumbar spondylosis encapsulates Plaintiff's functional limitations related to lupus and/or rheumatoid arthritis symptoms.

It is not clear to the Court which diagnosed impairment—lupus and/or rheumatoid arthritis—Plaintiff's non-lumbar spondylosis symptoms are associated

[104] AR 1529.

[105] AR 1514.

[106] AR 1506.

DISPOSITIVE ORDER - 23

with.[107] Nonetheless, the medical record establishes that the ALJ's step-two findings are not supported by substantial evidence and correspondingly that the light-work residual functional capacity (RFC) does not fully account for Plaintiff's symptoms related to her lupus/rheumatoid arthritis. Plaintiff's treating providers were confronted with mixed evidence as to the cause for Plaintiff's observed joint pain and muscle weakness, spasticity, hyperreflexia, and clonus. The observed joint pain, synovitis of her hands, weakness in her lower extremities, and gait instability were not accounted for at step two, nor with the light-work RFC at step five. While Plaintiff's hand and feet pain improved with medication, she still was observed with bruising consistent with falls, an unstable gait, and a significant bilateral Trendelenburg gait; use of a cane was recommended by her physical therapist; and Dr. Flesher observed her using a cane.[108]

Overall, the medical record reflects more than simply a diagnosis of lupus/rheumatoid arthritis and reported limiting symptoms by Plaintiff. The treatment record reflects observations of signs consistent therewith. Plaintiff establishes error at step two. This step-two error impacted the remainder of the

---

[107] The medical record reflects Plaintiff was observed with myalgia, synovitis, gait instability, hyperreflexia/spastic quadriparesis/clonus, and leg weakness. It is possible that the medical records since June 2023 may shed more information as to the cause and reveal a source that is not lupus or rheumatoid arthritis.

[108] AR 550, 952, 1166, 1200, 1204, 1224, 1234.

ALJ's disability evaluation. For instance, the ALJ rejected the reviewing administrative finding of Craig Billinghurst, MD, and Robert Stuart, MD, that Plaintiff could only occasionally balance because "[t]he record does not support that the claimant would have difficulty maintaining body equilibrium to prevent falling when walking standing, crouching, or running on narrow, slipper, or erratically moving surfaces or while performing gymnastic feats."[109] Remand for further proceedings is necessary, including a physical consultative examination. The consultative examiner is to be given sufficient medical records to allow for a longitudinal perspective of Plaintiff's lupus/rheumatoid arthritis.[110]

## IV.    Conclusion

Plaintiff establishes the ALJ erred, and Plaintiff's remaining arguments need not be addressed. On remand, the ALJ is to further develop the record, including arranging for a medical expert trained in rheumatoid arthritis or systemic lupus erythematosus to conduct a consultative examination of Plaintiff. The ALJ shall then conduct anew the disability evaluation, beginning at step two.

---

[109] AR 30. In addition, because the ALJ did not recognize that the physical therapist instructed Plaintiff to use a single point cane to reduce the risk of falls, the ALJ's RFC assessment may have been consequentially impacted. *See* AR 1204.

[110] The record must clearly identify what medical records the examiner reviewed.

1    Accordingly, **IT IS HEREBY ORDERED**:

2    1.    The ALJ's nondisability decision is **REVERSED, and this matter is**

3          **REMANDED to the Commissioner of Social Security for**

4          **further proceedings pursuant to sentence four of 42 U.S.C. §**

5          **405(g)**.

6    2.    The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and**

7          **11**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

8    IT IS SO ORDERED. The Clerk's Office is directed to file this order and

9    provide copies to all counsel.

10   DATED this 12th day of February 2025.

11

12          EDWARD F. SHEA
            Senior United States District Judge

13

14

15

16

17   Q:\EFS\Civil\2024\24cv5098. Tracy F. final. lc1.docx

18

19

20

21

22

23